## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **COLONY INSURANCE COMPANY** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:20-CV-474-RP** |
| | § | |
| **FIRST MERCURY INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant** | § | |

## CIC'S MOTION FOR SUMMARY JUDGMENT

Colony Insurance Company ("CIC") moves for summary judgment and pursuant to Fed. R. Civ. P. 56 shows as follows:

### I. Introduction

CIC is entitled to recover the amount it paid to fund a settlement of an underlying lawsuit against CIC's and First Mercury's mutual insured, DL Phillips Construction, Inc.[1] When the underlying lawsuit was settled, CIC and First Mercury agreed that the question of ultimate liability for the settlement would be litigated later. Such agreements among insurers are commonplace and facilitate settlements, which the law encourages.

CIC had no duty to contribute to the settlement because the claims asserted against DL Phillips were not covered by the CIC policies. They were, however, covered by First Mercury's. Accordingly, as between First Mercury and CIC, First Mercury should have paid the entire settlement, and CIC is entitled to recover all of its settlement contribution from First Mercury. There are no genuine issues of material fact, and CIC is entitled to judgment as a matter of law.

---

[1] The underlying lawsuit was styled *Palmer Cravens, LLC v. National Fire Ins. Co. of Hartford, et al.*, Cause No. C-6015-14-F in the 332nd Judicial District Court of Hidalgo County, Texas.

## II. Factual Background

In November of 2012, DL Phillips[2] contracted with underlying plaintiff Palmer Cravens, LLC to replace the roof of a VA outpatient clinic in McAllen, Texas, and to perform related work.[3] Palmer's work was completed in early 2013 and a warranty was issued by the roof manufacturer.[4] No later than March of 2013, the roof and the HVAC system were leaking, and Palmer reported the leaks to DL Phillips.[5] The leaks continued through 2013, and Palmer eventually retained Rick Guerra-Prats to inspect the roof and interior of the project.[6] The consultant retained by Guerra-Prats to inspect the roof for Palmer issued a report dated February 17, 2014, which noted that there were numerous, serious roof defects causing the leaks.[7] Guerra-Prats obtained two repair estimates from a roofing subcontractor dated March 3, 2014, one for repairs and another for a re-roof of the project.[8] On March 4, 2014, Guerra-Prats issued an estimate for repairs to the project, including

---

[2] DL Phillips' d/b/a name is Ja-Mar Roofing, so it is often referred to in the underlying trial proceedings as Ja-Mar.

[3] Ex. 6 (all references to "Exhibits" are to exhibits to this motion, while all references to "Plaintiff's Exhibit(s)" are to Palmer's exhibits in the underlying lawsuit), Test. of Jay Palmer, Reporter's Record ("RR") Vol. 6 at 87:18-25 (CIC 443); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 38:10-25 (CIC 316); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 9:9-16 (CIC 344); Ex. 6, Test. of David Bloomer, RR Vol. 3 at 100:9-22 (CIC 323); Ex. 7-1, Ja-Mar Work Proposal, Pl.'s Ex. 12, RR Vol. 9 at 23 (CIC 476).

[4] Ex. 6, Pl.'s Opening Statement, RR Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of David Phillips, RR Vol. 3 at 46:1-4 (CIC 317); Ex. 6, Test. of David Bloomer, RR Vol. 3 at 102:18-25 (CIC 324); Ex. 6, Test. of Guadalupe Garza, RR Vol. 4 at 124:25– 125:5 (CIC 362-3); Ex. 6, Test. of David Guerra-Prats, RR. Vol. 5 at 13:12-18 (CIC 414); Ex. 6, Test. of Doug Schneider, RR. Vol. 6 at 17:15-23 (CIC 435); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 108:1 -9 (CIC 361); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:15-23 (CIC 435); Ex. 7-3, Ja-Mar Final Invoice, Pl.'s Ex. 20, RR Vol. 9 at 40 (CIC 478). Exs. 7-4 & 22, GAF Warranty Documents, Pl.'s Exs. 22, 102, RR Vol.3 at 44, Vol. 11 at 45 (CIC 479-80, 744).

[5] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 142:24-143:13 (CIC 374-5); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:24 -19:7 (CIC 435-7); Ex. 7-5, Emails Regarding Post Work Leaks, Pl.'s Ex. 23, RR. Vol. 9 at 46 (CIC 481-91).

[6] Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 125:17-135:19 (CIC 363-73); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 142:24-143:13 (CIC 374-5); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 10:12-12:9 (CIC 411-13).

[7] Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 13:4-14:24 (CIC 414-5); Ex. 7-7, Whitten Roof Inspection Feb. 2014, Pl.'s Ex. 60, RR. Vol. 9 at 195 (CIC 513-5).

[8] Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 151:9-155:18 (CIC380-84); Ex. 6, Test. of Rick Guerra-

the total reroof.[9] Subsequent estimates for repairs also called for a complete replacement of the roof and a manufacturer warranty inspection in 2015 — which found no leaks at the time due to repair work done by Palmer — determined that the issues were Palmer's responsibility.[10] The defects with DL Phillips' work were never properly or completely fixed,[11] and resulting damages continued to take place until the underlying trial in June 2018.[12]

First Mercury issued liability policies to DL Phillips, one effective from April 21, 2012, to April 21, 2013, and another effective from April 21, 2013, to April 21, 2014.[13] Each of the First Mercury policies has a $1 million per occurrence limit of liability.[14] Commerce & Industry

---

Prats, RR Vol. 5 at 14:25-18:22 (CIC 415-19); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 103:23-105:7 (CIC 444-6); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 178:13-18 (CIC 452); Ex. 7-13, Garza March 2014 Roof Replacement Estimate, Pl.'s Ex. 84 RR Vol. 10 at 171 (CIC 608-9); Ex. 7-14, Garza March 2014 Roof Repair Estimate, Pl.'s Ex. 85 RR Vol. 10 at 173 (CIC 610-1); Ex. 7-15, Garza Early 2014 Drawing, Pl.'s Ex. 86 RR Vol. 10 at 175 (CIC 612).

[9] Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 178:13-18 (CIC 452); Ex. 7-9, Guerra-Prats March 2014 estimate, Pl.'s Ex. 64 (w/o pictures) RR Vol. 9 at 211 (CIC 518-525).

[10] Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 151:9-155:18 (CIC 380-4); Ex. 7-8, Garza Sept. 2014 Estimate, Pl.'s Ex. 62, RR Vol. 9 at 199 (CIC 516-7), Ex. 7-19, Garza Estimate June 11, 2018, Pl.'s Ex. 95, RR Vol. 11 at 5 (CIC 710-1); Ex. 7-18, Guerra-Prats June 2018 Estimate, Pl.'s Ex. 94, RR Vol. 10 at 198 (CIC 624-709); Ex. 7-10, Guerra-Prats October 3, 2014 Estimate, Pl.'s Ex. 65, RR Vol. 10 at 4 (CIC 526-601); Ex. 7-26, Garza Increasing Estimates, Pl.'s Ex. 113, RR Vol. 11 at 91 (CIC 783); Ex. 7-23, GAF Jan. 2015 Inspection, Pl.'s Ex. 103, RR Vol. 11 46 (CIC 745-51).

[11] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 17:22-18:20 (CIC 310-1); Ex. 6, Test. of Joel Ortegon, RR. Vol. 3 at 162:19-167:23 (CIC 334-9); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 79:16-88:21 (CIC 346-355); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 95:3-97:6 (CIC 356-8); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 103:12-104:4 (CIC 359-60); Ex. 6, Test. of Thomas McCoy, RR. Vol. 4 at 206:4-8, 208:1-16, 209:5-12; 211:7-214:21, 216:1-223:17, 225:8-231:25 (explaining defects existing at time of trial) (CIC 385-406); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 40:3-41:4 (CIC 426-7); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 41:17-42:17 (CIC 427-8); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 50:8-11 (CIC 429); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 116:2-117:17 (CIC 450-1); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 182:15-184:9 (CIC 453-5); Ex. 6, Pl.'s Closing Argument, RR Vol. 8 at 27:22-36:7 (CIC 460-69); Ex. 7-19, Garza June 2018 Estimate, Pl.'s Ex. 95, RR Vol. 11 at 5 (CIC 710-1); Ex. 7-26, Garza increased estimates, Pl.'s Ex. 113, RR Vol. 11 at 191 (CIC 783); Ex. 7-6, Serve-Pro, Baldwin, et al. invoices Post Sept. 2014, Pl.'s Ex. 25, RR Vol. 9 at 60 (CIC 492-512); Ex. 7-24, Post Sept. 2014 Photos, Pl.'s Ex. 105, RR Vol. 11 at 54 (CIC 752-781).

[12] Ex. 6, Pl.'s Offer of Proof, RR Vol. 8 at 65:17-69:25 (CIC 470-4); Exs. 7-27& 28 CD and Photos of June 2018 Damage, Exs. 114 and 115, RR Vol. 11 at p . 92-93 (CIC 784-788).

[13] The first policy was numbered NJ CGL 0000009684-01, the second policy was numbered NJ CGL 0000009684-02. *See* First Mercury policies, Ex. 2 (CIC 148-264).

[14] *Id*. (CIC 148, 207).

Insurance Company ("C&I") issued a policy effective January 13, 2013, to April 21, 2014, that was excess of First Mercury's coverage.

The first CIC policy incepted on April 21, 2014.[15] Palmer filed suit against DL Phillips on June 16, 2014.[16] CIC and First Mercury defended DL Phillips under a reservation of rights. After agreeing to defend, CIC sued DL Phillips seeking a determination that it owed no coverage for Palmer's claims.[17] The jury in the underlying lawsuit found in favor of Palmer and a judgment in excess of $3.7 million was awarded against DL Phillips.[18]

The underlying lawsuit and the CIC coverage lawsuit were mediated together and resolved for the total sum of $████.[19] Under the settlement, CIC contributed $████, of which $████ was allocated as an indemnity payment and $████ was allocated as a supplementary payment. First Mercury contributed $████, of which $████ was allocated as an indemnity payment and $████ was allocated as a supplementary payment. C&I contributed $████, all of which was an indemnity payment.

After noting the existence of CIC's lawsuit filed for the purpose of obtaining a determination of no coverage, the settlement agreement among DL Phillips, CIC, First Mercury, and C&I states that CIC and First Mercury reserve the right to pursue claims for re-allocation and/or reimbursement of all amounts paid to resolve the underlying lawsuit.[20]

CIC contributed to the settlement and reserved the right to seek a declaration that it owed

---

[15] The first CIC policy was number 103 GL 0003631-00, which was followed by a second policy effective April 21, 2015 to April 21, 2016, number 103 GL 0003631-01. Each policy had a $1 million per occurrence limit of liability. *See* CIC policies, Ex. 1 (CIC 1-147).
[16] Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 73:9-14 (CIC 430); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 49:2-5 (CIC 442).
[17] Confidential Release and Settlement Agreement, Ex. 5 (CIC 280-303).
[18] Judgment, Ex. 3 (CIC 265-268).
[19] Gen. Release & Compromise Settlement Agr., Ex. 4 (CIC 269-279); Confidential Release & Settlement Agr., Ex. 5 (CIC 280-303).
[20] Ex. 5 at 3 (CIC 282).

no coverage and that First Mercury should have paid CIC's share. First Mercury agreed, and counsel for First Mercury in this lawsuit was involved in the negotiation, drafting, and finalization of the settlement document memorializing the parties' agreement.

This lawsuit, contemplated by the parties' resolution of the underlying lawsuit, is brought to determine ultimate responsibility for the settlement of Palmer's claims against DL Phillips as between CIC and First Mercury. The CIC policies do not provide coverage for Palmer's claims, but the 2012-2013 First Mercury policy does. CIC is therefore entitled to recover from First Mercury the full amount of its settlement payment.

### III. Summary Judgment Evidence

In support of its motion for summary judgment, CIC relies upon the following evidence:

Exhibit 1.      True and correct copies of the relevant CIC policies;

Exhibit 2.      True and correct copies of the relevant First Mercury policies;

Exhibit 3.      A true and correct copy of the underlying Judgment entered against DL Phillips;

Exhibit 4.      A true and copy of the underlying settlement document;

Exhibit 5.      A true and correct copy of the settlement agreement among DL Phillips, CIC, First Mercury, and C&I;

Exhibit 6.      Excerpts from trial testimony and proceedings in the underlying lawsuit;

Exhibit 7.      Exhibits offered and admitted at the trial of the underlying lawsuit;

Exhibit 8.      The Affidavit of Matthew Rigney.

### IV. Argument and Authorities

The evidence admitted at the underlying trial proves that the claims asserted against DL Phillips are not covered by the CIC policies. The same evidence also proves that the claims are covered by the 2012-2013 First Mercury policy. First Mercury therefore owes CIC $████. First Mercury's defense that CIC cannot recover because it was a volunteer is belied by Texas law and

the parties' agreement to resolve the question of responsibility for the settlement in this lawsuit. Its other pleaded defense, that CIC cannot recover because DL Phillips was fully protected, is patently absurd and likewise unavailing. CIC is entitled to recover its entire $██████ settlement contribution from First Mercury.

## A.       The claims against DL Phillips were not covered by the CIC Policies

The CIC policies contain an endorsement titled "Exclusion – Continuous, Progressive or Repeated – Bodily Injury, Property Damage, or Personal and Advertising Injury," which provides in relevant part:

> A.  SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions is amended and the following is added:
>
> This insurance does not apply to:
>
> 1. "bodily injury" or "property damage", including continuous or progressively deteriorating or repeated "bodily injury" or "property damage", that first occurs prior to the effective date of this policy;
> 2. "bodily injury" or "property damage", including continuous or progressively deteriorating or repeated "bodily injury" or "property damage", that first occurs prior to the effective date of this policy and continues during the policy term;
>
> 3. "bodily injury" or "property damage", including continuous or progressively deteriorating or repeated "bodily injury" or "property damage", that first occurs prior to the effective date of this policy, continues during the policy term, and ends after the expiration date of this policy; or
> 4. "bodily injury" or "property damage", including continuous or progressively deteriorating or repeated "bodily injury" or "property damage", that first occurs after the expiration date of this policy.
>
> The exclusions in paragraphs 1. through 4. apply regardless of whether such "bodily injury" or "property damage" is known or unknown by any "Insured", as defined below.[21]
>
> * * *

---

[21] CIC Policies, Ex. 1 (CIC 50, 125)

The exclusion precludes coverage for damage that begins prior to policy inception and continues during the policy period. The exclusion also applies to continuous damage that extends beyond the policy's expiration. Further, it applies regardless of whether the insured was aware of the damage. The beginning of damage before the policy's inception and its progressive and/or continuous nature trigger the exclusion.

The evidence admitted at the underlying trial establishes, as a matter of law, that Palmer's damages were the result of DL Phillips' defective roof replacement work, which began to leak prior to inception of the first CIC policy in April 2014 and continued to leak through the underlying trial in June 2018. This is all that is required to trigger the exclusion.

a. **DL Phillips' Defective 2012-2013 Work Caused Damage Before April 2014**

DL Phillips was contracted to replace the roof on the project in late 2012 and finished its work in early 2013.[22] Almost immediately after DL Phillips' work was completed, the roof began to leak.[23] Palmer notified DL Phillips of the leaks and requested that something be done.[24] But the problems were never completely or properly fixed and leaks continued throughout 2013.[25] By

---

[22] Ex. 6, Test. of James McKinney, RR. Vol. 4 at 9:9-16 (CIC 344); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 108:1-9 (CIC 361); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:15-23 (CIC 435); Ex. 7-1, Ja-Mar Proposal to Palmer, Pl.'s Ex. 12, RR Vol. 9 at 23 (CIC 476); Ex. 7-3, Ja-Mar's Final Invoice, Pl.'s Ex. 20, RR Vol. 9 at 4 (CIC 478); Ex. 7-20, Val Tex Ceiling Tile Invoice, Pl.'s Ex. 97, RR Vol. 11 at 8 (CIC 712).

[23] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 142:24-143:13 (CIC 374-5); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:24-19:7 (CIC 435-7); Ex. 7-5, Emails regarding Post Work Leaks, Pl.'s Ex. 23, RR Vol. 9 at 46 (CIC 481-91); Ex. 7-7, Whitten Feb. 2014 Report, Pl.'s Ex. 60, RR Vol. 9 at 195 (CIC 513-15).

[24] Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:24-19:7 (CIC 435-37); Ex. 7-5, Emails Regarding Post Work Leaks, Pl.'s Trial Ex. 23, RR Vol. 9 at 46 (CIC 481-91).

[25] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 17:22-18:20 (CIC 310-1); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 125:17-135:19 (CIC 363-73); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 143:17-147:12 (CIC 375-79); Ex. 6, Test. of David Bloomer, RR Vol. 3 at 102:18-105:11 (CIC 324-7); Ex. 7-7, Whitten Feb. 2014 Report, Pl.'s Ex. 60, RR Vol. 9 at 195 (CIC 513-15); Exs. 7-13 & 14, Garza Roof Estimates March 3, 2014, Pl.'s Exs. 84 and 85, RR Vol. 10 at 171 (CIC 608-611).

March 2014, Palmer had already obtained an estimate for the cost to replace the roof.[26] This was more than a month before CIC's policy incepted on April 21, 2014. According to the evidence in the underlying trial, the problems with DL Phillips' work were never fixed.[27]

Specifically, the trial testimony, expert reports, and repair estimates calling for a re-roof of the project (all of which were admitted at the underlying trial and which form the basis for the award against DL Phillips) conclusively establish that the damage complained of by Palmer began prior to the inception of the first CIC policy on April 21, 2014.[28] If any kind of property damage is progressive in nature, it is ongoing damage caused by water intrusion. Not only does the

---

[26] Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 151:9-155:18 (CIC 380-4); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 14:25-18:22 (CIC 415-9); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 103:23-105:7 (CIC 444-6); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 178:13-18 (CIC 452); Ex. 7-13 & 14, Garza March 2014 estimates, Pl.'s Exs. 84 and 85, RR Vol. 10 at p . 171 (CIC 608-11); Ex. 7-29, Guerra-Prats March 2014 Estimate, Pl.'s Ex. 64, RR Vol. 9 at 211 (CIC 789-859).

[27] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 17:22-18:20 (CIC 310-1); Ex. 6, Test. of Joel Ortegon, RR. Vol. 3 at 162:19-167:23 (CIC 334-9); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 79:16-88:21 (CIC 346-55); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 95:3-97:6 (CIC 356-8); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 103:12-104:4 (CIC 359-60); Ex. 6, Test. of Thomas McCoy, RR. Vol. 4 at 206:4-8, 208:1-16, 209:5-12 (CIC 385-7), 211:7-214:21, 216:1-223:17, 225:8-231:25 (explaining defects existing at time of trial) (CIC 388-406); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 40:3-41:4 (CIC 426-7); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 41:17-42:17 (CIC 427-8); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 50:8-11 (CIC 429); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 116:2-117:17 (CIC 450-1); Ex. 6, Pl.'s Closing Argument, RR Vol. 8 at 27:22-36:7 (CIC 460-9); Ex. 7-6, Serve-Pro, Baldwin, et al. Post Sept. 2014 invoices, Pl.'s Ex. 25, RR Vol. 9 at 60 (CIC 492-512); Ex. 7-8, Garza Sept. 2014 Estimate, Pl.'s Ex. 62, RR Vol. 9 at 199 (CIC 516-7); Ex. 7-10, Guerra-Prats October 3, 2014 Estimate, Pl.'s Ex. 65, RR Vol. 10 at 4 (CIC 526-601); Ex. 7-12, Dough Schneider Photographs May 23, 2018, Pl.'s Ex. 75, RR Vol. 10 at 86 (CIC 606-7); Exs. 7-11 & 16, McCoy Photographs Dec. 11, 2016, Pl.'s Exs. 91 & 67, RR Vol. 10 at 186 (CICI 602-5; 613-20); Ex. 7-17, Palmer Photographs January 13, 2015, Pl.'s Ex. 92, RR Vol 10 at 194 (CIC 621-3); Ex. 7-18, Guerra-Prats June 13, 2018 Estimate, Pl.'s Ex. 94, RR Vol. 10 at 198 (CIC 624-709); Ex. 7-19, Garza June 11, 2018 Estimate, Pl.'s Ex. 95, RR Vol. 11 at 5 (CIC 710-1); Ex. 7-25, Damaged Metal Decking Shown Dec. 29, 2014, Pl.'s Ex. 110, RR Vol. 11 at 88 (CIC 782); Exs. 7-27 & 28, Pl.'s Offer of Proof of June 2018 damage, Pl.'s Exs. 114 and 115, RR Vol. 11 at 92 (CIC 784-8).

[28] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 143:17-147:12 (CIC 375-9); Ex. 7-5, Emails Regarding Post Work Leaks, Pl.'s Ex. 23, RR Vol. 9 at 46 (CIC 481-91); Ex. 7-7, Whitten Feb. 2014 Report, Pl.'s Ex. 60, RR Vol. 9 at 195 (CIC 513-5); Ex. 7-9, Guerra-Prats March 2014 Estimate, Pl.'s Ex. 64 (w/o pictures), RR Vol. 9 at 211 (CIC 518-525), Exs. 7-13 & 14, Garza Roof Estimates March 3, 2014, Pl.'s Exs. 84 and 85, RR Vol. 10 at 171 (CIC 608-611); Ex. 7-21, Early 2014 Garza Photographs, Pl.'s Ex. 101, RR Vol. 11 at 14 (CIC 713-743).

summary judgment record prove that the damage of which Palmer complained began prior to inception of the first CIC policy, but the evidence also establishes conditions had deteriorated so badly by then that on March 3, 2014, more than a month before the inception of the first CIC policy, at least one expert had already recommended a complete re-roof of the project.[29]

### b. Damage Caused by DL Phillips' Defective Work Continued Into the CIC Policy Periods

Ongoing leaks and resulting damage continued beyond the inception of the first CIC policy in April 2014. This became most evident in September 2014, when a large rain event caused extensive interior damage to the project.[30] The damage resulting from that rain event conclusively established that, despite the roof manufacturer having issued a warranty for the roof in early 2013, the roof was not properly installed by DL Phillips.[31] Thus, the damage that began prior to the inception of the first CIC policy continued into and throughout the first CIC policy period. Further, despite Palmer retaining contractors to attempt repairs to DL Phillips' defective installation and to

---

[29] Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 151:9-155:18 (CIC 380-4); Ex. 7-13 & 14, Garza March 3, 2014, Estimates, Pl.'s Exs. 84 and 85, RR Vol. 10 at 171 (CIC 608-11); Ex. 7-9, Guerra-Prats March 2014 Estimate, Pl.'s Ex. 64 (w/o pictures), RR Vol. 9 at 211 (CIC 518-525).

[30] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:24-11:15 (CIC 307-8); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 18:23-24:17 (CIC 419-25); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 19:8-21:6 (CIC 437-9); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 47:9-48:18 (CIC 440-1); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 103:23-105:7 (CIC 444-6); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 107:10-108:4 (CIC 448-9); Ex. 7-6, Serve-Pro, Baldwin et al. Post Sept. 2014 invoices, Pl.'s Ex. 25, RR Vol. 9 at 60 (CIC 492-512); Ex. 7-8, Garza Sept. 23, 2014 Estimate, Pl.'s Ex. 62, RR Vol. 9 at 199 (CIC 516-7); Ex. 7-10, Guerra-Prats October 3, 2014 Estimate, Pl.'s Exs. 65, RR Vol. 10 at 4 (CIC 526-601); Ex. 7-24, Interior Post Sept. 2014 pictures, Pl.'s Ex. 105 RR Vol. 11 at 54 (CIC 752-781).

[31] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:24-11:15 (CIC 307-8); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guy Hardy, RR. Vol. 3 at 149:2-150:5 (CIC 329-30); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 15:10-19 (CIC 345); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 125:17-135:19 (CIC 363-73); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 182:15-184:9 (CIC 453-5); Ex. 7-9, Guerra-Prats March 2014 estimate, Pl.'s Trial Ex. 64 (w/o pictures), RR Vol. 9 at 211 (CIC 518-525); Ex. 7-17, Palmer January 2015 Roof Photographs, Pl.'s Ex. 92, RR Vol. 10 at 194 (CIC 621-3); Ex. 7-19, Garza June 11, 2018 Estimate, Pl.'s Ex. 95, RR Vol. 11 at 5 (CIC 710-1); Ex. 7-18, June 13, 2018 Guerra-Prats Estimate, Pl.'s Ex. 94, RR Vol. 10 at 198 (CIC 624-709); Ex. 7-11, McCoy Dec. 11, 2016 Photographs, Pl.'s Ex. 67 RR Vol. 10 at 80 (CIC 602-5);

repair the extensive damage to the interior of the project,[32] the problems were never properly or completely fixed. The water intrusion and resulting damage continued through the time of the underlying trial, which took place in June 2018.[33]

### c.    The Continuous Damage Exclusion in the CIC Polices Precludes Coverage

DL Phillips' work was defective from the start. That work was completed in early 2013, more than a year before the inception of the first CIC policy in April 2014. The evidence admitted in the underlying trial establishes that the leaks and resulting damage from that defective work began prior to the inception of the first CIC policy and continued throughout CIC's time on the risk. The continuous and progressive damage exclusion in the CIC policies precludes coverage for damage that begins prior to policy inception, even if that damage continues into and beyond the policy period. Such is exactly the factual scenario proven in the underlying trial. Therefore, the exclusion in the CIC policies is trigged, and the policies do not cover Palmer's claims against DL Phillips.[34]

Because the CIC policies did not cover the repair cost and lost rent damages awarded against DL Phillips, the policies likewise did not furnish coverage for the pre-judgment or post-judgment interest awarded. In other words, not only was CIC's $▉▉▉ indemnity payment not covered, but there was no coverage for the $▉▉▉ settlement contribution by CIC allocated as

---

[32] Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 125:17-135:19 (CIC 363-73); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 182:15-184:9 (CIC 453-55); Ex. 7-6, Serve-Pro, Baldwin et al. invoices, Pl.'s Exs. 25, RR Vol. 9 at 60 (CIC 492-512).

[33] Ex. 6, Pl.'s Offer of Proof, RR Vol. 8 at 65:17-69:25 (CIC 470-4); Exs. 7-27 & 28, June 2018 Damage, Pl.'s Exs. 114 and 115, RR Vol. 11 at 92 (CIC 784-8).

[34] *Cf., Evanston Ins. Co. v. DCM Contracting, Inc*., 441 F.Supp.3d 1336, 1344 (N.D. Ga. 2020) (similar exclusion enforced where property damage began before policy's effective date); *Starr Surplus Ins. Co. v. Cushing Hospitality, LLC*, 2021 WL 1093100 at *8-9 (W.D. Okla., March 22, 2021) (exclusion enforced where property damage existed or was in the process of taking place prior to policy inception); *Developers Sur. & Indem. Co. v. View Point Builders, Inc*. 2020 WL 3303046 at * 3-4 (W.D. Wash., June 17, 2020) (exclusion enforced where construction defect existed prior to policy inception); *Saarman Const., Ltd. v. Ironshore Specialty Ins. Co.*, 230 F.Supp.3d 1068, 1081-84 (N.D. Cal. 2017) (similar exclusion enforced where work completed prior to policy inception date).

a supplementary payment.[35] The evidence, however, demonstrates that the 2012-2013 First Mercury policy covered the underlying claims.

## B.  First Mercury's 2012-2013 Policy Covered Palmer's Claims Against DL Phillips

The underlying trial evidence proves that coverage under the 2012-2013 First Mercury policy was triggered. This evidence also shows that the continuous or progressive injury and damage exclusion contained in that First Mercury policy does not apply. Finally, because the amount of covered damages proven and awarded at the trial ████████████████████████

███████████████████████████████, there is no question that CIC's entire settlement contribution represents amounts covered by First Mercury. CIC is therefore entitled to recover its entire settlement contribution.

### a.  The 2012-2013 First Mercury Policy was Triggered by Covered Damages

Just after DL Phillips completed its work in early 2013, the roof of the project began to leak.[36] The defective nature of DL Phillips' performance and the ongoing nature of the water intrusion was such that Palmer obtained an estimate for a complete re-roof of the project.[37] Palmer later retained a roofing contractor to attempt temporary repairs and to clean up and perform interior repairs after a particularly large water intrusion event in September 2014,[38] but the problems with

---

[35] *See* CIC policies, Ex. 1 (CIC 18, 92).

[36] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 142:24-143:13 (CIC 374-5); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:24-19:7 (CIC 435-7); Ex. 7-5, Emails regarding Post Work Leaks, Pl.'s Ex. 23, RR Vol. 9 at 46 (CIC 481-91).

[37] Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 14:25-18:22 (CIC 415-9); Ex. 7-13, Garza March 2014, Roof Replacement Estimate, Pl.'s Ex. 84, RR Vol. 10 at 171 (CIC 608-9); Ex. 7-9, Guerra-Prats March 2014 estimate, Pl.'s Ex. 64 (w/o pictures), RR Vol. 9 at 211 (CIC 518-25).

[38] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:24-11:15 (CIC 307-8); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 151:9-155:18 (CIC 380-4); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 18:23-24:17 (CIC 419-25); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 19:8-21:6 (CIC 437-9); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 47:9-48:18 (CIC 440-1); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 103:23-105:7 (CIC 444-6); Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 107:10-108:4 (CIC 448-9); Ex. 7-6, Serve-Pro, Baldwin et al. invoices, Pl.'s Ex. 25, RR Vol. 9 at 60 (CIC 492-512); Ex. 7-8, Garza Sept. 23, 2014 New

the roof installed by DL Phillips in 2012-2013 were never resolved.[39]

The roof installed by DL Phillips began to leak in early 2013, during First Mercury's time on the risk. Therefore, the 2012-2013 First Mercury policy was triggered by covered property damage.[40] Because all of the damage recovered by Palmer was caused by DL Phillips' defective performance, which was one occurrence, and because the beginning of that damage took place during First Mercury's time on the risk, the triggered 2012-2013 First Mercury policy provides coverage for all of the damages resulting from that occurrence up to its $1 million limit, even though some of the damage actually took place subsequent to the expiration of that policy.

Texas law applies an "all sums" approach to an insurer's liability under a triggered policy. A triggered policy must respond up to its limit of liability for all sums the insured is legally obligated to pay because of property damage that triggers coverage.[41] Accordingly, even though much of the damage took place after First Mercury's time on the risk expired, under the "all sums"

---

[39] Ex. 6, Pl.'s Opening Statement, RR Vol. 2 at 17:22-18:20 (CIC 310-1); Ex. 6, Test. of Joel Ortegon, RR. Vol. 3 at 162:19-167:23 (CIC 334-9); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 79:16-88:21 (CIC 346-55); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 95:3-97:6 (CIC 356-8); Ex. 6, Test. of James McKinney, RR. Vol. 4 at 103:12-104:4 (CIC 359-60); Ex. 6, Test. of Thomas McCoy, RR. Vol. 4 at 206:4-8, 208:1-16, 209:5-12 (CIC 385-7), 211:7-214:21, 216:1-223:17, 225:8-231:25 (explaining defects existing at the time of trial) (CIC 388-406); Ex. 6, Test. of Rick Guerra-Prats, RR. Vol. 5 at 40:3-41:4 (CIC 426-7); Ex. 6, Test. of Rick Guerra-Prats, RR. Vol. 5 at 41:17-42:17 (CIC 427-8); Ex. 6, Test. of Rick Guerra-Prats, RR Vol. 5 at 50:8-11 (CIC 429); Ex. 6, Test. of Jay Palmer, RR. Vol. 6 at 116:2-117:17 (CIC 450-1); Ex. 6, Test. of Jay Palmer, RR. Vol. 6 at 182:15-184:9 (CIC 453-5); Ex. 6, Pl.'s Closing Argument, RR. Vol. 8 at 27:22-36:7 (CIC 460-9); Ex. 7-18, Guerra-Prats June 13, 2018 Estimate, Pl.'s Ex. 94, RR Vol. 10 at 198 (CIC 624-709); Ex. 7-19, Garza June 11, 2018 Estimate, Pl.'s Ex. 95, RR Vol. 11 at 5 (CIC 710-1); Ex. 7-11 & 16, McCoy Dec. 11, 2016, Photographs, Pl.'s Exs. 91 and 67, RR Vol. 10 at 80, 186 (CIC 602-5; 613-20); Exs. 7-27 & 28, Pl.'s Offer of Proof, Pl.'s Exs. 114 and 115, RR Vol. 11 at 92-93 (CIC 784-8).

[40] *See Don's Building Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23-24 (Tex. 2008) (adopting "injury in fact" trigger of coverage in property damage cases, whereby a liability policy is triggered when covered property damage takes place during the policy); *Cent. Mut. Ins. Co. v. KPE Firstplace Land, LLC,* 271 S.W.3d 454, 460 (Tex. – App. Tyler 2008, no pet.) (damage "occurs" when property becomes damaged).

[41] *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842 (Tex. 1994); *CNA Lloyds of Texas v. St. Paul Ins. Co.,* 902 S.W.2d 657, 660 (Tex. App.—Austin 1995, writ dism'd by agr.)

approach applied by Texas law the 2012-2013 First Mercury policy furnished coverage to DL Phillips for all of the damages awarded in the underlying lawsuit up to its $1 million limit.[42]

Texas law allows a paying insurer to reallocate liability among all triggered policies based on when property damage actually took place under an injury-in-fact analysis.[43] But that is of no aid to First Mercury here because, in order to allocate damage to a particular policy, coverage under that policy must exist. In this case, due to CIC's continuous property damage exclusion discussed above, CIC provided no coverage for the damages recovered by Palmer.[44] The triggered First Mercury policy was the only policy that furnished coverage for Palmer's claims against DL Phillips. Thus, First Mercury bears full responsibility for the settlement contribution paid by CIC.

### b.   The Continuous Damage Exclusion in the 2012-2013 First Mercury Policy Does Not Apply

In order for the progressive injury exclusion in the 2012-2013 First Mercury policy to apply, the damage in question must have begun prior to inception of the policy.[45] If damage begins before policy inception, whether or not it is known by the insured, the First Mercury exclusion applies regardless of whether the damage first took place, in whole or in part, prior to policy inception and regardless of whether it continues during the policy period.

The requirements of the First Mercury exclusion are not met. DL Phillips' work was started and completed during the 2012-2013 policy, and the damage began during that policy period, almost immediately after DL Phillips completed its work.[46] Coverage under the First Mercury

---

[42] *See Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 454 (Tex. App.—Dallas 2013, pet. denied) (triggered policy required to respond up to limits); *Lennar Corp. v. Markel Am. Ins. Co.,* 413 S.W.3d 750, 759 (Tex. 2013) (triggered policy covered total amount of loss, not just loss during the policy period).
[43] *Lennar Corp.,* 413 S.W.3d at 759; *Don's Building*, 267 S.W.3d at 32 n.45.
[44] CIC policies, Ex. 1 (CIC 50, 125).
[45] First Mercury 2012-2013 policy, Ex. 2 (CIC 185).
[46] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6 Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 125:17-135:19 (CIC 363-73); Ex. 6 Test. of Doug

policy was therefore triggered and its continuous damage exclusion is inapplicable. Under Texas law, First Mercury's triggered 2012-2013 policy must respond up to its full $1 million limits.

### c. The Full Amount of CIC's Contribution Represents Damages Covered by First Mercury

Any argument by First Mercury that coverage under its policy to the extent of CIC's settlement contribution is not established by the evidence admitted in the underlying trial fails as a matter of law. The underlying judgment totaled $3,665,986.30, not including post-judgment interest.[47] The settlement of the underlying lawsuit totaled $███████.[48] The evidence, as a matter of law, establishes at least $1,000,000 in damages covered by the First Mercury policy. For example, Palmer was awarded $1.8 million in lost rents caused by its inability to lease the building after the VA left when its lease expired, due to the building's damaged condition.[49] This $1.8 million amount ████████████████████████████████████ and therefore establishes damage covered under the First Mercury policy ████████████████████ ████████████████████.[50] The $600,000 awarded to replace the roof and repair the consequential damage is also covered.

### d. The 2012-2013 First Mercury Policy Otherwise Furnishes Coverage for the Settlement

The loss of use of the building is "property damage" under the First Mercury policy, which

---

Schneider, RR Vol. 6 at 17:24-19:7 (CIC 435-7); Ex. 7-5, Emails Regarding Post Work Damage, Pl.'s Ex. 23, RR Vol. 9 at 46 (CIC 481-91),Ex. 7-3, Ja-Mar Final Invoice, Pl.'s Ex. 20 RR Vol. 9 at 40 (CIC 478).
[47] Judgment, Ex. 3 (CIC 265-8).
[48] Gen. Release & Compromise Settlement Agr., Ex. 4 (CIC 269-279).
[49] Judgment, Ex. 3 (CIC 265-8).
[50] Not only is the full $████ indemnity contribution by CIC covered under First Mercury's policy, but the entire $████ supplementary payment contribution by CIC is also covered. Like the CIC policies, the First Mercury policy pays supplementary payments in addition to policy limits. First Mercury 2012-2013 policy, Ex. 2 (CIC 159). The underlying judgment included $590,986.30 in pre-judgment interest, which ████████████████████████████████████████████████████████. Judgment, Ex. 3 (CIC 267). Therefore, CIC is entitled to recover its $████ supplementary payment contribution from First Mercury.

defines the term to include loss of use of tangible property that is not physically injured.[51] The

building in question was physically injured. Additionally, those portions of the rest of the building

that were not physically injured do not constitute "impaired property," which is defined as property

other than the insured's work that cannot be used or that is less useful due to the presence of the

insured's work if it can be restored to use by the repair or replacement of the insured's work.[52]

Because water intrusion damaged the remainder of the building, and it could not be repaired or

restored to use by the repair or replacement of DL Phillips' work, the new roof, the remainder of

the building does not constitute "impaired property."[53] Exclusion m in the First Mercury policy

therefore does not apply. The $1.8 million awarded to Palmer for loss of use of the building is

covered by First Mercury. This element of damage alone is sufficient to establish covered damages

under the First Mercury policy ███████████████████████████████.

DL Phillips' work was completed in early 2013, and leaks began immediately.[54] Thus, the

claim fell within the "products-completed operations hazard" as that term is defined in the First

Mercury policy.[55] Exclusion l precludes coverage for damage to the insured's work that falls

within the product-completed operations hazard. But the exclusion does not apply if the damaged

---

[51] First Mercury 2012-2013 policy, Ex. 2 (CIC 166).

[52] *Id*. (CIC 164).

[53] Property must be capable of being restored to use by the repair or replacement of the insured's work in order to be "impaired property." Unlike here, where the property is not physically injured or can be restored to use only by the repair of the insured's work, exclusion m applies. *See U.S. Metals, Inc. v. Liberty Mut. Group, Inc.,* 490 S.W.3d 20, 28 (Tex. 2015) (diesel units restored to use by replacing insured's work were "impaired property"); *Admiral Ins. Co. v. H&W Indus. Servs.,* 2011 WL 318277, at *5 (W.D. Tex., Feb. 1, 2011) (exclusion m applied to expenses arising from removal of insured's defective products); *Colony Ins. Co. v. Rentech Boiler Systems, Inc.,* 2018 WL 1442740 (N.D. Tex., March 1, 2018) (exclusion m precluded coverage for processing facility rendered less useful because generator supplied by insured did not work as agreed).

[54] Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 10:14-17 (CIC 307); Ex. 6, Test. of David Phillips, RR. Vol. 3 at 64:1-66:6 (CIC 318-20); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 124:10-125:5 (CIC 362-3); Ex. 6, Test. of Guadalupe Garza, RR. Vol. 4 at 142:24-143:13 (CIC 374-5); Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:24-19:7 (CIC 435-7); Ex. 7-5, Emails Regarding Post Work Damage, Pl.'s Ex. 23, RR Vol. 9 at 46 (CIC 481-91).

[55] First Mercury policy, Ex. 2 (CIC 166). Ex. 6, Test. of Doug Schneider, RR Vol. 6 at 17:15-23 (CIC 435).

work or the work out of which the damage arises was performed by a subcontractor.[56] The evidence admitted at the underlying trial establishes that DL Phillips subcontracted with Guy Hardy to perform the roof replacement and that Hardy, in turn, subcontracted with Joel Ortegon to perform most of the actual roof installation.[57] Because exclusion l does not apply due to the work being performed by DL Phillips' subcontractors, the cost to replace the roof is covered by the First Mercury policy.

The other element of damage to the building recovered by Palmer was to the remainder of it, other than the roof, caused by water intrusion.[58] This is unquestionably "property damage" caused by an "occurrence" to which no First Mercury exclusion applies. The remainder of the building was not DL Phillips' work. The exclusions in the CGL policy apply to preclude coverage for damage to the insured's work and ensure that the insurer is not a guarantor of the insured's performance. However, when an insured's defective performance causes damage to property that is outside of the insured's scope of work, such damage is covered by liability insurance.[59] The damages to the non-roof portions of the VA outpatient clinic caused by water intrusion from DL Phillips' defectively installed roof are therefore covered by the First Mercury policy.

## C.    CIC's Settlement Contribution Was Not a Voluntary Payment

Texas law does not require that CIC actually provide coverage for the claims asserted against DL Phillips in order for CIC to recover from First Mercury. All Texas law requires to

---

[56] See e.g., Pine Oak Builders Co., Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 655 (Tex. 2009); Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co., 712 F.Supp.2d 628, 647-651 (S.D. Tex. 2010); Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 11-12 (Tex. 2007).

[57] Ex. 6, Test. of David Bloomer, RR Vol. 3 at 90:7-91:25 (CIC 321-2);Ex. 6, Pl.'s Opening Statement, RR. Vol. 2 at 12:3-22 (CIC 309); Ex. 6, Test. of Guy Hardy, RR. Vol. 3 at 120:5-20 (CIC 328); Ex. 6, Test. of Joel Ortegon, RR. Vol. 3 at 155:19-156:14 (CIC 331-2); Ex. 6, Test. of Joel Ortegon, RR. Vol. 3 at 160:5-18 (CIC 333); Ex. 7-2, Contract Between Guy Hardy and Ortegon, Pl.'s Ex. 14, RR. Vol. 9 at 25 (CIC 477).

[58] Ex. 6, Test. of Jay Palmer, RR Vol. 6 at 106:16-21 (CIC 447); Judgment, Ex. 3 at 2 (CIC 266).

[59] See e.g., Wilshire Ins. Co. v. RJT Const., LLC, 581 F.3d 220, 226 (5th Cir. 2009); Pine Oak Builders, 279 S.W.3d at 655; Lamar Homes, 242 S.W.3d at 8-16.

permit recovery is a potential that coverage was available.[60] The presumption against voluntary payments and the summary judgment evidence more than satisfy the threshold for overcoming First Mercury's voluntary payment defense.[61]

Under Texas law, "[a]n insurer who pays a third-party claim against its insured is not a volunteer if the payment is made in good faith and under a reasonable belief that the payment is necessary to its protection."[62] The Texas Supreme Court disfavors application of the "voluntary payment" defense to a settling insurer's subrogation claims, stating as follows:

> If an insurance company's right to subrogation could be challenged by the wrongdoer on the grounds that the policy did not actually provide coverage, it would necessarily be in the company's interest to litigate all questionable claims with its insured. The effect of ignoring the reasonable belief rule, therefore, is to discourage insurance companies from paying or settling disputed claims and thereby force insureds more often into litigation with their insurers. [This] conception of the volunteer doctrine is bad public policy, and we decline to adopt it.

*Keck*, 20 S.W.3d at 703 (citations omitted). The summary judgment evidence establishes that CIC made a payment to settle the claims against DL Phillips in good faith to protect its insured from a large judgment in excess of available insurance limits.[63] Under these circumstances and applicable Texas law, CIC's settlement payment was not voluntary as a matter of law.

Further, First Mercury's voluntary payment defense defies its express agreement with CIC to fund the underlying settlement and to litigate their coverage dispute.[64] First Mercury's position that CIC's claim is precluded by the voluntary payment doctrine is directly contrary to the parties' express agreement and their intent to resolve their coverage dispute after settling the underlying

---

[60] *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 703 (Tex. 2000).
[61] *Keck,* 20 S.W.3d at 702 (noting presumption against voluntary payments).
[62] *Keck.,* 20 S.W.3d at 702; *see also Colony Ins. Co. v. Peachtree Const., Ltd.,* 647 F.3d 248, 256 (5th Cir. 2011) ("Texas courts have been liberal in their determination that payments were made involuntarily.") (Texas law); *Colony Ins. Co. v. First Mercury Ins. Co.*, No. CV H-18-3429, 2020 WL 5658662, at *4 (S.D. Tex. Sept. 22, 2020) (rejecting identical First Mercury argument).
[63] Confidential Settlement, Ex. 5 (CIC 280-303); Judgment, Ex. 3 (CIC 265-268).
[64] Confidential Settlement, Ex. 5 (CIC 280-303).

lawsuit. Texas law both allows and encourages such agreements among insurers.

**D.    DL Phillips' Full Protection Does Not Preclude Recovery by CIC**

First Mercury's remaining defense, that CIC cannot recover because a fully protected insured has no right to recover an additional pro-rata portion of a settlement payment from another paying insurer, fails as a matter of law. Presumably, First Mercury relies on *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*[65] as the basis for its argument. The Fifth Circuit hasrejected the argument that *Mid-Continent* precludes subrogation claims whenever the insured is fully indemnified.[66] Additionally, *Mid-Continent* does not help First Mercury here for at least three reasons.

First, CIC does not attempt to recover because it believes it paid a larger percentage of the underlying settlement than it should have. Rather, CIC contends that it was not obligated to pay any of the underlying settlement because its policy did not cover the judgment against DL Phillips. For *Mid-Continent* to apply, each insurer must have acknowledged its duty to defend and indemnify.[67] Here, CIC contended that it had no coverage for the underlying claims and filed suit against DL Phillips to obtain a no-coverage determination.[68] The purpose of subrogation is to cause a loss to fall on the proper party. Because CIC's policy did not cover the underlying claims, the entire underlying settlement should have been paid by First Mercury. This case is therefore factually distinguishable from *Mid-Continent*, whose rule of no recovery does not apply.

Second, nothing in Texas law prohibits insurers from resolving a claim and agreeing to litigate the ultimate liability for that resolution later.[69] That is exactly the situation here. CIC and

---

[65] 236 S.W.3d 765 (Tex. 2007) ("*Mid-Continent*").
[66] *See Amerisure Ins. Co. v. Navigators Ins. Co.,* 611 F.3d 299, 306-07 (5th Cir. 2010).
[67] *See Empr'rs Ins. Co. of Wausau v. Penn-America Ins. Co.,* 705 F.Supp.2d 696, 707-10 (S.D. Tex. 2010) (*Mid-Continent* limited to situation where insurers did not dispute that both covered the loss).
[68] Confidential Settlement, Ex. 5 (CIC 280-303).
[69] *Cf., In re Farmers Tex. Cty. Mut. Ins. Co.,* 2021 WL 1583878 at *6 (Tex., April 23, 2021); *Excess*

First Mercury agreed to their respective settlement contributions and, in that very same agreement, specifically provided that ultimate responsibility for the settlement would be resolved in this litigation. The parties' agreement to determine ultimate responsibility for the underlying settlement in this lawsuit removes this case from the purview of the rule announced in *Mid-Continent*.

Finally, *Mid-Continent's* rationale applies only to overlapping co-primary policies. The underlying claim in *Mid-Continent* was a personal injury lawsuit. Both settling insurers' policies were in effect at the time of the injury and therefore furnished the same coverage.[70] Here, the First Mercury and CIC policies do not overlap. CIC's time on the risk as the insurer for DL Phillips began on April 21, 2014.[71] Its policy excludes damages beginning before that time and continuing into the policy period, per the continuous property damage exclusion. First Mercury's policy, on the other hand, covers damages that began during its time on the risk and prior to the inception of the CIC policy.[72] Where policies do not overlap in terms of time on the risk and continuous damage is involved, the rule of *Mid-Continent* is inapplicable.[73] Because the First Mercury and CIC policies do not provide the same coverage, First Mercury's defense fails as a matter of law.

## V. Conclusion

CIC did not provide coverage for DL Phillips' liability in the underlying lawsuit, but First Mercury did. Pursuant to Texas law and the parties' agreement to determine responsibility for the underlying settlement in this litigation, CIC is entitled to recover from First Mercury, whose

---

*Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc*., 246 S.W.3d 42, 43 (Tex. 2008); *Tex. Ass'n of Counties Cty. Gov.'t Risk Mgmt. Pool v. Matagorda Cty*., 52 S.W.3d 128, 135 (Tex. 2000) (all discussing agreements to resolve coverage disputes after underlying settlements.)

[70] *Mid-Continent*, 236 S.W.3d at 768-69.

[71] *Compare* CIC policies, Ex. 1 (CIC 1-147), *with* First Mercury policies, Ex. 2 (CIC 148-264).

72 First Mercury 2012-2013 policy, Ex. 2 (CIC 148-206).

73 *See Md. Cas. Co. v. Acceptance Indem. Ins. Co.,* Case No. A-08-CA-697-SS, 2009 U.S. Dist. LEXIS 105285, at * 11-17 (W. D. Tex. May 14, 2009) *aff'd*, 639 F.3d 701 (5th Cir. 2011) (fact that policies did not provide overlapping or common coverage meant that contractual subrogation claim was not barred).

defenses fail as a matter of law. Because the entire underlying settlement should have been funded by First Mercury, CIC is entitled to recover its $███████ settlement contribution. The Court should therefore grant CIC's motion for summary judgment.

WHEREFORE, PREMISES CONSIDERED, CIC prays that its motion for summary judgment be granted, and for such other and further relief, both at law and in equity, as it may show itself justly entitled and for which it shall ever pray.

Respectfully submitted,

*/s/ Stephen A. Melendi*
Stephen A. Melendi
State Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
State Bar No. 24068636
mattr@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199
**ATTORNEYS FOR PLAINTIFF**
**COLONY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew Rigney*
Matthew Rigney